*BROCKENBROUGH, J.,
delivered the opinion of the Court:
It is undoubtedly true, that before any person can have judgment rendered against him for a felony, he must be regularly accused by the Grand Jury of his country, and his guilt must be established by the verdict of a jury. The accusation in due and solemn form, is as indispensable as the conviction. What, then, is the solemnity required by Law in making the accusation? The Bill of Indictment is sent or delivered to the Grand Jury, who, after hearing all the evidence adduced by the Commonwealth, *358 decide whether it be a true Bill, or not. If they find it so, the foreman of the Grand Jury endorses on it, “a true Bill,” and signs his name as foreman, and then the Bill is brought into Court by the Whole Grand ' Jury, and in open Court it is publicly delivered to the Clerk, who records the fact. It is necessary that it should be presented publicly by the Grand Jury; that is the evidence required by Law to prove that it is sahctioned by the accusing body, and until it is so presented by the Grand Jury, with the endorsement aforesaid, the party charged by it is not indicted, ,nor is he required, or bound, to answer to any charge against him, which is not so presented.
The prisoner in the present Case, when brought to the bar of the Superior Court of Wythe, moved to be discharged, because he was not indicted; in other words, because the paper which was read to him as an Indictment, was not publicly presented in open Court against him, by the whole Grand Jury. And he called for proof that he was indicted. What kind of proof does the Law require to shew that he was indicted? Undoubtedly record proof. The proceedings of Courts of Justice are regularly recorded by a sworn officer, and in this State the proceedings of each day are signed by the Judge. The Law will not allow that parol evidence can be produced of the important fact that the prisoner was regularly accused. The record in this Case is produced, and what does it shew? That the Grand Jury, (whose names are recorded,) was regularly impanelled, sworn, and charged, and that they found many Bills of Indictment, and made several presentments, during a Session of several days, and that then having nothing further to present, they were discharged. In this record of their proceedings, there is nothing to shew that the Grand Jury have accused the prisoner, that they presented *in open Court a Bill against him, endorsed by their foreman, “a true Bill:” or, in' other words, that they found any Indictment against him: on the contrary, the Court intending to record all the findings of the Grand Jury, did not record a finding of the Grand Jury of this Bill. But, it is said, that the Indictment itself found in this record, with the endorsement, ‘‘a true Bill,” and signed by “David Campbell, foreman,” who was the foreman of the Grand Jury who sat at that Term, is record proof that this very Bill was found by that very Grand Jury. We admit, that after a Grand. Jury lias found a Bill, and reported it, and their finding is placed on the record, that the Indictment so found, a'nd endorsed, becomes as much a part of the record, as if it was spread in extenso on the Order Book; but, in order to give it that character, we deem it essential that a record should be made of the finding on the Order Book. We consider this to be essential, because the Statute requires that the proceedings of the Superior- Courts should be regularly placed on the Order Book, and the proceedings of juries in open Court are a part of the proceedings of the Court itself. We consider it to be essential, because from the year 1776 to this period, (a) it has been the uniform practice of the General Court, afterwards, of the District Courts, and more recently, of the Circuit Courts, to record the findings of the Grand Jury, as part of the proceedings of the Courts. The circumstance that this Bill is endorsed a true Bill, and signed by “David Campbell, foreman,” affords no record proof that the Bill was found by any Grand Jury, nor particularly by this .Grand Jury. That gentleman may have been frequently the foreman of other Grand Juries in the same Court. And though we all know, as men, that he would Uot sign any paper as foreman, without being really so, yet as Judges, we must require record proof that he was authorised by the Grand Jury of which he was foreman, to make the endorsement now before us, and that he presented it in their presence, in open Court, as the accusation against this individual.
It has been urged upon us with great earnestness, that this record does shew that the prisoner was indicted by the K'Grand Jury, and that the accusation was made with all due solemnity. Thus it is said that the record states, “that Benjamin Cawood, who stands indicted for murder, was led to the bar, and thereof arraigned, and pleaded not guilty to the Indictment.” This is said to be a declaration of record by the Judge, and a recognition by the prisoner that he has been indicted; that is to say, that this very Indictment has been presented by the Grand Jury in open Court as an Indictment against him. The answer given to this argument by the prisoner’s Counsel, we deem to be satisfactory and conclusive. In the first place, this is no direct averment of the fact, that the Indictment has been regularly found, it is mere recital. To ascertain with certainty the correctness of the position, let us suppose that when this entry was made, the prisoner had risen and denied the fact. “Sir, I am not indicted.” What could the Judge have said? Could he have verified the fact of his being indicted from the record? Certainly not. He could not have so verified it without an amendment. If he could not have so verified it without an amendment of the record, we certainly ought not to consider the Judge as meaning to assert that in which he is not supported by the record. The probability, nay the certainty is, that at that time the Judge had not adverted to the omission, and we cannot suppos'e that at that time he meant to spread on the record an averment which was unnecessary, and out of place. We are of opinion, that this entry only proves that the prisoner was led to the bar; that the paper spread as the record, and purporting to be an Indictment, was read to him, and that he pleaded not guilty to it. A similar *359 remarle may be made as to the recognition bj the prisoner that he was indicted. He was not in the Court till brought in from the jail to which he had been committed. How could he know that the proceedings on the part of the Commonwealth were irregular? On the contrary, he undoubtedly supposed that every thing was regularly conducted by the officers of the Commonwealth, and supposing so, he pleaded, not thereby meaning to affirm that he was regularly indicted.
By analogy to civil proceedings, it is clear that this defect cannot be supplied. If an issue be in fact made up between A. and B. but the issue is not stated on the record, although the record proceeds to state that the jury were sworn to try the issue joined, and a verdict and judgment ^rendered, the judgment shall be reversed, because no issue was joined. 3 Munf. 314; 4 Munf. 431, &c. And yet if presumptions of Law were allowable in such case, woul^ it not be strongly inferable from the entry, that the jury were sworn to try the issue; that in point of fact the issue was joined? So, if after issue joined, a jury be sw’orn to try the issue and render a verdict, but the verdict is not entered on the record, and a judgment is rendered for the damages assessed by the jury, does not a strong presumption arise that a verdict was rendered, and is not the presumption very strong that the judgment would not have been rendered without a verdict? But yet the judgment would stand for nought, because it does not appear on the record that the verdict was rendered.
In these civil cases, the regularity of the posterior proceedings affords no presumption that the prior, are right, although they contain a recital to that effect. Why, then, should a different rule prevail in criminal cases? It is indispensable that a Grand Jury should present an Indictment in open Court, and that it should be proved by the record. The declaration afterwards, that the prisoner stands indicted, and that he pleads to the Indictment, may afford a presumption that he was regularly indicted, but is not stronger than that the issue was joined, or verdict rendered in the above mentioned civil cases.
It has been urged, that it is too late, after plea pleaded, to make this objection, and the decisions of this Court in the Cases of Cohen, (ante, p. 158,) and of Angel, (ante, p. 231,) have been referred to in proof of this position. What were those decisions? The Defendant, in each case, was regularly indicted; he pleaded, and there was a verdict rendered against him establishing his guilt. He moved the Court in arrest of judgment, assigning as a reason, that he had not been previously examined for the offence, and the Court refused to arrest the judgment. It is true, that a previous examination is an indispensable pre-requisite to a prosecution for fel-onj', and so far the cases are alike. But what was the ground on which the Court refused to arrest the judgment in those cases? Because the record of the Examining Court is no part of the record of the Superior Court, and it is an established principle that you cannot arrest a judgment, except for some reason apparent on the face of the record. Burgess’s Case, at June Term, 1825, does not contradict this. The general expression there *used, that the motion came too late, being after plea, must be understood to refer to the state of that case, which was after plea and verdict. But the Presentment of the Grand Jury is a part of the record of the conviction in the Superior Court, and so the omission may be taken advantage of by errors in arrest.
Another strong difference between the Cases is this : Here, there has been no verdict. The prisoner had pleaded, it is true, and there was a jury, but they not agreeing, there was no verdict. The motion, then, is to be considered, (in this respect,) as it had been at the same Term that he pleaded. How we hold, that if a prisoner, after pleading to issue, finds that he has not been examined, and moves for leave to withdraw his plea, and moves to quash the Indictment, because he has not been examined, his motion ought, ex debito justi-tise, to be allowed him; and if the Court finds that the fact is so, the Indictment ought to be quashed.
The next question is, whether this omission of the Grand Jury can now be supplied, and whether the record can be amended in this particular. A view of the decisions in this country, and in England, referred to by the Counsel, leads us to the conclusion, that during the Term, the records are in the breast of the Court, and that amendments may be made in the' proceedings of the Court; but that after the Term has passed, no amendments can be made, except of mere clerical misprisions : that this is not a misprision of that kind; that the Term having passed, there is nothing to amend by, except the memory of the Judge, of the Clerk, of the Grand Jurors, and others; and that it cannot be amended.
An answer to the fourth, fifth and sixth questions propounded by the Superior Court of Law for Wythe, requires that we should take a short review of the 28th section of the Act concerning Criminal proceedings. (1 Rev. Code, 607.) That section declares, that every person charged with treason or felony, who shall not be indicted before or at the second Term after he shall have been committed, unless the attendance of witnesses against him appears to have been prevented by himself, shall be discharged from his imprisonment; and if he be not tried at or before the third Term after his examination before the Justices, he shall be forever discharged of the crime, unless the failure proceed from a continuance granted on the prisoner’s motion, *or from the inability of the jury to agree on a verdict.
This Court, in Santee’s Case, (ante, p. 363,) decided, that the word Term, means the actual Session of the Court. If, then, *360 an Examining Court of Washington county, before whom the prisoner was charged with the murder of his wife, did sit, and remand the prisoner for trial to the Superior Court, and if two Sessions of the Superior Court of Washington were thereafter actually held, the prisoner was entitled to a discharge from his imprisonment at the period that this question was adjourned to this Court, that is, on the ISth October, 1824, unless the attendance of the witnesses against him was prevented by himself, because it does not appear by the records of the Superior Court of Washington, that he was indicted at or before the second Term of the said Superior Court.
In answering to the fifth and sixth questions, we must place ourselves in the same situation as we would have been in immediately after the adjournment of these questions. One of the grounds taken by the prisoner, before the Superior Court of Wythe, why he should be discharged from his imprisonment was, that “it does not appear by the record that the fact charged in the indictment has been examined by the County Court of Washington.” If there is no record of his examination for the offence of murdering his wife, it seems clear, that notwithstanding his discharge from imprisonment, he might, on the said ISth October, 1824, and may yet be arrested, and examined, and indicted for the offence. But, if he had been examined for the said offence (of which we know nothing, as we have not the record of the Examining Court before us,) then he could not have been immediately arrested and removed to Washington. He might, however, have been thereafter, that is at the third Term, or actual Session of the Superior Court of Washington, regularly indicted, and then arrested and tried.
If, however, he was actually examined, and there is record proof of it, and three or more Terms, or actual Sessions of the Superior Court have passed without an Indictment presented in open Court and recorded, and without a trial on such Indictment, we are bound to say that he is “forever discharged of the crime,” for the perpetration of which he was examined and committed.
The following must be entered as the judgment of the Court:
*The Court is of opinion, and doth decide:
1. That as it does not appear from the records of the Superior Court of Washington county, at the April Term, 1824, that the Grand Jury had presented any Bill of Indictment against Benjamin Cawood for murder, in open Court, as a true Bill, but on the contrary, as it appears that such Bill was not presented, that the said Benjamin C awood cannot be considered as having been fhen and there indicted of the said crime.
2. That the defect of the record in this particular, cannot be supplied by resorting to the paper purporting to be an Indictment copied into the record by the Clerk, nor by the endorsement thereon.
3. That the subsequent plea of not guilty, pleaded by the prisoner, does not cure the defect of the record.
4. That the prisoner, Benjamin Cawood, was, at the period at which this question was adjourned, to wit, on the ISth October, 1824, entitled to a discharge from • his imprisonment, if he had been duly examined for the said offence by the County Court of Washington, and if after such examination, and commitment thereupon, and before the said 15th October, 1824, two Terms of the Superior Court of Washington had been actually held, unless the attendance of the witnesses against him appear to have been prevented by himself.
5. and 6. That if he had been entitled to be discharged from his imprisonment as aforesaid, he could not have been arrested for the same crime, unless a Bill of Indictment had been found at the Superior Court of Washington, at the third Term of that Court actually held: but, that if he has not actually been examined by the Examining Court of Washington county, for the offence set forth in the paper purporting to be an Indictment, he may yet be arrested and examined for the said offence, but not otherwise.
All of which is ordered to be certified, &c.
From the above opinion and judgment, JUDGES DANIEE and BARBOUR, dissented, and the latter delivered the following opinion:
This Case involving principles of great importance in the administration of the criminal justice of the country, and there being a majority of the Court of a different opinion from that which I entertain, I feel it to be a duty *which I owe to myself, to state the grounds of my opinion. The record states, that Benjamin Cawood, who stands indicted for murder, was led to the bar, in custody of the Jailor, and thereof arraigned and pleaded not guilty to the Indictment; and that, thereupon, a jury was empanelled and sworn in the Case: this is stated to have occurred on the 3d of May, 1824; the jur3 not agreeing in their verdict, were adjourned from day to day, ’till the 8th of May, when by reason of the adjournment of the Court, they were discharged.
It appears from the record, that the Court on the 1st of May, made a special order, directing the Sheriff to summon jurors in a distant part of the county from the prisoner’s residence, with a view to his impartial trial, he being accused of murder, as appears from said order; that at the September Term, 1824, on the motion of the prisoner, the venue was changed to Wythe; that on the 26th and 27th of April, being previous days of the same Term at which the prisoner was arraigned, and pleaded not guilty, the Grand Jury made several presentments, and returned several Indictments, specifying them particularly, amongst *361 which, the one against the prisoner is not included; and that thereupon, having nothing further to present, they were discharged. There is copied into the record, a paper, having" the regular form of an Indictment for murder against the prisoner, having upon it the endorsement, “A true Bill’ and it appears from the certificate of the Clerk, that tnis was the precise Indictment upon which, on the 3d of May, 1824, the prisoner was arraigned, to which he pleaded not guilty, and for the trial of the issue on which the jury was empan-elled; but it does not appear from any part of the record, that there was any entry made, that this Indictment had been presented by the Grand Jury, as “A true Bill. ’’ One of the material questions arising upon the adjourned Case, and upon which there is a difference of opinion amongst' the Judges, is this. Is there, or is there not enough appearing upon the record, to cure the omission, to enter upon the record, that this Indictment was presented by the Grand Jury, as “A true Bill?” I am of opinion that there is. When an Indictment is preferred to a Grand Jury, and they endorse upon it “A true Bill;” according to 4 Blackstone, 305, “the Indictment is then said to be found, and the party stands indicted;” and in the language of 1 Chitty, 219, the endorsement, “A true Bill, made upon the' Bill, becomes a part of the Indictment, and renders it a complete accusation against the prisoner.”
*A Bill of Indictment, then, with such endorsement, rendering the accusation complete against a party, and there being in this Case an Indictment, with such endorsement, it follows that the accusation is complete against the prisoner, unless its efficacy be destroyed by the omission to make the entry aforesaid, that is, that it was returned “A true Bill.” I know of no authority which requires this entry necessarily to be made upon the record. It is conceded, that it is the common practice of the country, and that it is a safe and convenient practice; but the question is here, as to its necessity? I consider such an entry, as a mere medium of proof that the Indictment was in fact found by the Grand Jury; and that its sole purpose is to prevent an Indictment from being foisted in upon a Court, and that no man shall be put to answer an accusation, which is not shewn to have been so found. That this is its only purpose, is manifest from the consideration before stated, that the finding of the Grand Jury renders the accusation complete. Considering it in this view, let us enquire, if there be no other medium of proof, equally calculated to attain the end proposed. It is not supposed by any one, that it is necessary to spread the Indictment in extenso, upon the record. Supposing then, the entry to have been made, in the most formal manner in which it is ever done, it would be, that the Grand Jury had presented to the Court an Indictment against the prisoner “A true Bill.” This would only prove, that an Indictment for murder I had been presented, but it would not prove that the paper copied into the record, was that Indictment; this we must take upon the ipse dixit of the Clerk; nor would it prove, when, where, or upon whom the murder was committed. These things we must derive from the Indictment itself.
If then, the only proof afforded by the entry required, would be, that an Indictment for murder was found against the prisoner, it seems to me that there is enough appearing upon this record to prove the same thing. I will not dwell upon minor circumstances, such as that the Judge, on the 1st of May, made a special order for a jury, for the trial of the prisoner accused of murder; though in legal propriety he could not, after passing an Examining Court, be said to be accused, until he was indicted; the adjournment also of the Case to this Court, with the assent of the prisoner, though until he was indicted, there was no accusation depending in the Supe- ■ rior Court, which could be adjourned.
"^Passing those by without further remark, I come to that which I consider in effect, as altogether equivalent to the entry required. The record states that the prisoner who stands indicted for murder, was thereof arraigned, and pleaded not guilty to the Indictment; this is an entry upon the Order-book of the Court, and therefore has its sanction. But the prisoner could not be indicted unless the Grand Jury has found the Bill true; and he could not be arraigned, nor plead to an Indictment, unless there was one to be arraigned upon and to plead to. When, then, the Court has, in its own order, said that the prisoner stood indicted, which could not be, without the necessary finding by the jury, this order is equivalent to a declaration that it was so found; and there is, therefore, no danger of an Indictment having been surreptitiously imposed upon it; and when the prisoner has been arraigned, which could not be, without the Indictment having been read to him, and when he has pleaded not guilty to that Indictment, he has admitted that there was an Indictment properly found, inasmuch as finding is ot its essence ; and there is, therefore, no danger, that he may have been put upon his trial, without a legal accusation against him. And thus all the proof which could have been derived from the entry required, that is, that the Bill was found a true one, is afforded by other entries upon the record, in effect proving the same: As to the identity of the Indictment, with reference to the one found by the Grand Jury, it has already been shewn, that had the usual formal entry been made, we should yet have had no other reliance but the fidelity of the Clerk; and it appears from his certificate, that the Indictment copied into this record, was the one on which the prisoner was arraigned, and to which he pleaded. It has been said, that it no where appears when the prisoner was indicted. I think that it does, in effect, appear upon the record. We know that whensoever a prisoner is indicted, he is of course by Law to be put upon his trial, at the same Term, un *362 less there be some cause for the continuance of the Case. And when such a continuance takes place, the record shews it: Now, the record in this Case, which professes to be a full one, and which we are to take as such, shews no continuance; and as where there is none, the trial is to be at the same Term with the Indictment found; and as the arraignment, plea, and swearing of the jury, were in Majv 1824, the result is, that at that Term the Indictment was *found. It has been contended, however, that the record, by stating certain Indictments to have been found, and that the jury having nothing further to present, were discharged, negatives the idea of finding this Indictment at that Term. I think not. It shews certain things to have been done; and it shews, that at the time of their discharge, they had nothing else to do; but this is not at all incompatible with the idea of their having found another Bill, which the Clerk omitted to enter. As to the effect of the arraignment, and plea, there is an authority in 1 Chittj, 285, which seems to me to have a strong bearing. It is said, that the total want of arraignment is ground for reversing judgment, after attainder; and yet, that if it be stated in the record that the Defendant had oyer of the Indictment, it shall be intended that he was arraigned formally upon it; now, it is surely as strong, nay a stronger, intendment, to infer arraignment from oyer of the Indictment, than it is from actual arraignment, which implies that the Indictment was read, and from a plea to that Indictment, to infer that there was one; and one, too, which had been regularly found; as otherwise he could not be arraigned, or put upon his trial.
CJpon the whole view of this question, I am therefore of opinion, that there is proof enough in this record to shew, that the Indictment was legally found against the prisoner.

 On examining' the records of the General Court, It is found that this practice prevailed before the Revolution.